USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FINGER LAKE LLC,

                Plaintiff,

        v.

QIANG TU,

                Defendant.

No. 19-CV-6522 (RA)

MEMORANDUM OPINION
& ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Finger Lake LLC brings this action against Defendant Qiang Tu, alleging immigration fraud. Now before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). For the following reasons, the motion is granted on jurisdictional grounds.

## BACKGROUND[1]

Plaintiff is a "domestic limited liability company existing under and by virtue of the laws of the State of New York[,] with its principal place of business" also in New York. Compl. ¶ 1. The limited liability company (the "LLC") was formed in January 2013 to "operat[e] a chain hotel, the Best Western," for which it purchased two properties in August 2013. *Id.* ¶¶ 6-7.

---

[1] The Court draws the following facts from Plaintiff's complaint and the documents attached thereto, *see* Dkt. 1, and for purposes of this motion, accepts them as true. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In addition, "[i]t is . . . well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint." *St. Paul Fire & Marine Ins. Co. v. Universal Builders*, 409 F.3d 73, 80 (2d Cir. 2005). Therefore, in support of its Rule 12(b)(1) motion, Defendant "proffer[ed] evidence beyond the [p]leading[s]." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *see also MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (explaining that, in a Rule 12(b)(1) motion, a defendant may "put[] forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction"). Plaintiff, in turn, was permitted to "come forward with evidence of [its] own to controvert that presented by the defendant, or may instead rely on the allegations in [its] pleading[.]" *Katz v. Donna Karen Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (citation omitted). As such, the Court also considers these submissions in addressing the Rule 12(b)(1) motion.

**I.     Relevant Agreements**

In 2015, Defendant spoke to Li Shen, Plaintiff's general manager, "to express his interest in purchasing certain membership interest in Finger Lake." *Id.* ¶ 8. In doing so, he offered to invest $500,000 – an amount that would qualify him for an EB-5 visa under the Immigrant Investor Program. On August 18, 2015, Defendant, Shen, and Suwei Yang, the only then-existing member of Finger Lake, signed an agreement that was drafted entirely in Chinese (the so-called "Chinese Agreement"). *See* Dkt. 1, Ex. A. Several days later, Defendant's lawyer advised him "to terminate the above Chinese agreement and enter into a formal membership purchase agreement." Compl. ¶ 12. The parties entered into that subsequent agreement (the "Membership Agreement") on August 28, 2015. *See* Dkt. 1, Ex. B. Shortly thereafter, Defendant filed his application for an EB-5 visa. *See* Dkt. 1, Ex. C.

Pursuant to the Membership Agreement, Defendant agreed to invest $500,000 – to "be capital investment made by Buyer into the Company" – in exchange for "7.15% of all membership interests of the Company." Dkt. 1, Ex. B. Upon payment, "the Company's operating agreement [was] to be amended such that it reflects the current ownership of membership interests in the Company," and Defendant was "appointed a management position in the Company and . . . given day-to-day managerial responsibilities and the right to participate in the policy formulation of the Company." *Id.* The Membership Agreement also noted that – for both Plaintiff and Defendant – there was no "guaranteed . . . rate of return, and no repayment or redemption arrangement of the investment[.]" *Id.*; *see also* Compl. ¶ 15 ("Pursuant to the Agreement, Qiang Tu agreed to share in the profit and loss of Finger Lake."). Plaintiff also promised to assist Defendant with his EB-5 visa application.

Around September 2018, Defendant asked Shen to return his $500,000 investment, citing

the fact that "he wished to abandon his immigrant visa petition." *Id.* ¶ 20. In response, Shen advised Defendant, "if he wished to withdraw as a member of Finger Lake," he must "follow the proper procedure under the New York Laws," also noting that "Finger Lake had not guaranteed either a rate of return or a repayment of his investment pursuant to the Agreement." *Id.* ¶ 21.

**II.   State Court Litigation**

On January 2, 2019, Defendant sued Plaintiff, Shen, and Yang in the Supreme Court of New York, Chemung County (the "Chemung County court"). Bringing one count of fraud against Shen and Yang and one count of breach of contract against Plaintiff, Defendant alleged that they made false allegations to induce him to invest and that Plaintiff "had insufficient working capital to meet its debt obligation and finish the Project." *Id.* ¶¶ 23-24; *see also* Dkt. 1, Ex. D (Defendant's State Court Complaint). The local newspaper in Chemung County reported on this lawsuit, and Defendant separately urged the District Attorney's Office of Chemung County to investigate Plaintiff, Shen, and Yang.

On February 22, 2019, after Plaintiff, Shen, and Yang failed to appear in state court, the Chemung County court entered a default judgment in Defendant's favor in the amount of $712,766.80. *See* Dkt. 1, Ex. E. On March 14, 2019, Plaintiff, Shen, and Yang filed a motion to vacate the default judgment, alleging that they had not been properly served, in addition to a motion to dismiss and to change the venue to New York County. The Chemung County court denied their motions on June 26, 2019. *See* Dkt. 1, Ex. F.

While waiting for the Chemung County court to decide its motions, Plaintiff filed a separate state-court action against Defendant in the Supreme Court of New York, New York County (the "New York County court") on May 2, 2019, alleging defamation, intentional infliction of emotional distress, and breach of fiduciary duty. *See* Dkt. 1, Ex. G. On August 15,

2019, after the New York County court judge warned Plaintiff that it would dismiss this action because of the pending Chemung County court action, Plaintiff stipulated to withdrawal of the action and "agree[d] to pursue all claims from the above-captioned action in the NY Supreme Court of Chemung County." Dkt. 11, Ex. I (Stipulation); *see also* Dkt. 11, Ex. H (Oral Argument Transcript).

### III.   This Action

On July 15, 2019, prior to filing its state-court action in New York County court and with the case still pending in Chemung County court, Plaintiff filed this federal action. On September 23, Defendant moved to dismiss the complaint on three independent grounds: for (1) lack of subject matter jurisdiction under Rule 12(b)(1); (2) improper venue under Rule 12(b)(3); and (3) failure to state a claim upon which relief can be granted under Rule 12(b)(6). Dkt. 10. Plaintiff opposed this motion on October 7. Dkt. 13.

## LEGAL STANDARD

The Court has, "[a]t the outset, . . . an independent obligation to determine whether federal jurisdiction exists in this case." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 48 (2d Cir. 2012). "A district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 618 (2d Cir. 2019). To resolve a motion to dismiss for lack of subject matter jurisdiction, a court "may refer to evidence outside the pleading." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). It is the burden of plaintiff, who is asserting subject matter jurisdiction, to "prov[e] by a preponderance of the evidence that [jurisdiction] exists." *Id*.

## DISCUSSION

Defendant seeks dismissal of Plaintiff's action on three independent bases. Because the Court agrees with Defendant's first basis for dismissal – that is, that the Court lacks subject matter jurisdiction – the Court will not consider Defendant's alternative arguments. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). The subsequent discussion, therefore, pertains only to the jurisdictional inquiry.

### I.  Subject Matter Jurisdiction

Plaintiff contends that the Court has subject matter jurisdiction on both diversity and federal question grounds. The Court addresses both arguments below.

### A.  Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332, Congress conferred district courts with "original jurisdiction in civil actions between citizens of different States[.]" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). To establish diversity jurisdiction, however, there must be "'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants."[2] *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley*, 772 F.3d 111, 117-18 (2d Cir. 2014) (quoting *Exxon Mobil Corp.*, 545 U.S. at 553); *see also Handlesman v. Bedford Vill. Assocs. Ltd.*, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit . . . be completely diverse with regard to citizenship.'" (citation

---

[2] Diversity jurisdiction also requires the amount in controversy to "exceed[] the sum or value of $75,000[.]" 28 U.S.C. § 1332(a). The parties do not dispute that this requirement is met here.

omitted)). In analyzing the citizenship of an LLC for purposes of diversity jurisdiction – relevant here because Plaintiff is an LLC – a court looks to "the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 49. As such, an LLC's citizenship is that of each one of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that the citizenship of all members of an LLC controls for diversity purposes); *Excimer Assocs., Inc. v. LCA Vision, Inc.*, 292 F.3d 134, 137 (2d Cir. 2002).

Here, acknowledging the general principle that "an LLC has the citizenship of each of its members," Plaintiff argues that there is diversity jurisdiction because:

> The citizenship of Finger Lake, for diversity purposes, is New York since the citizenship of its two members, Yang and Chen, is New York. In addition to the fact that Tu is a foreign alien with a citizenship of China, there is complete diversity between the parties. These allegations are sufficient to plead diversity.

Pl.'s Opp. at 10.[3] Notably, this assertion differs from the allegations made in its complaint. In the complaint, Plaintiff alleged that the LLC's citizenship was New York, that Yang was the "sole member" of the LLC, and that Defendant "was and may continue to be a resident of . . . Delaware." Compl. ¶¶ 1-2, 11. Although Plaintiff's assertions in its complaint and opposition differ, this does not prevent the Court from determining whether it has jurisdiction. Both parties submitted evidence allowing for a fact-based jurisdictional analysis rather than solely relying on the face of the complaint. *See Carter*, 822 F.3d at 56 (permitting "fact-based" challenges to subject matter jurisdiction). When conducting a fact-based jurisdictional inquiry, the Court may consider "extrinsic evidence" and must "make findings of fact in aid of its decision." *Id.* at 57.

Based on its review of the evidence, the Court concludes that there is not complete diversity between Plaintiff and Defendant. While on the face of the complaint, there seems to be

---

[3] The Court assumes that Plaintiff's reference to "Chen" was a typographical error and intended to be "Shen." *See* Compl. ¶ 11 (stating that the general manager of Plaintiff is Li Shen).

diversity jurisdiction because the LLC's citizenship – whether there are one or two members – is New York and Defendant's citizenship is either Delaware or China. However, the extrinsic evidence before the Court suggests otherwise. This is because Defendant is a member of Plaintiff Finger Lake LLC and thus his citizenship – whether that is Delaware or China – necessarily overlaps with Plaintiff's citizenship. *See Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 49 (concluding that an LLC's citizenship is based on "the citizenship of each of its members").

Plaintiff has conceded as much in numerous documents now before the Court. First, in state court pleadings and filings, Plaintiff has repeatedly argued that Defendant is a member of Finger Lake LLC. In its answer filed in Chemung County court on July 25, 2019, approximately a week after this action was filed, Plaintiff wrote: "Tu as the member of Finger Lake owes Yang and Finger Lake a fiduciary duty." Dkt. 11, Ex. G ¶ 116. Plaintiff's answer included several other admissions reflecting its understanding that Tu is a member of Finger Lake LLC. *See id.* ¶ 78 ("Defendants have relied on the formal Membership Interest Purchase Agreement and treated Tu as the minority member of Finger Lake."); *id.* ¶ 82 ("Shen advised Tu that if he wished to withdraw as the member of Finger Lake, Tu should follow the proper procedure under the New York laws."); *id.* ¶ 96 ("Defendants/Counterclaim Plaintiffs are entitled to recover such losses including time, money, and effort they spent on preparing Tu's immigration application, reporting of Tu as new member of Finger Lake to various government entities and all other actual and consequential damages resulting from the fraud."). Plaintiff made similar statements regarding Defendant's membership in Finger Lake LLC in its complaint in New York County court on May 2, 2019. *See* Dkt. 1, Ex. G ¶ 41 ("As a member of Finger Lake, Tu had a duty to exercise, *inter alia*, good faith, loyalty, trust and due care in performing his duties.").

In opposing Defendant's motion, Plaintiff seeks to ignore these statements previously made in state court. As Defendant notes, "Plaintiff's efforts in its opposition papers to twist itself into a veritable pretzel of conflicting positions with respect to Mr. Tu's status as a member of Finger Lake LLC in order to satisfy the diversity requirement are to no avail." Def.'s Reply at 3. Plaintiff asserts that its "position" in state court "was based on the fact that the Chinese Agreement has been duly terminated. In other words, the only binding agreement between the parties regarding the Investment was the Membership Agreement, where Tu agreed to purchase, and Yang agreed to sell 7.15% of all membership interest of the Company." Pl.'s Opp. at 9. But even if the Court accepted Plaintiff's proposition that the Chinese Agreement was terminated and the Membership Agreement is binding, that would further support Defendant's position that he is a member of Plaintiff Finger Lake LLC.

Plaintiff also wrongly contends that the Chemung County court granted a default judgment and enforced the Chinese Agreement, leaving "the validity of the Membership Agreement . . . in question," and thus, "[i]n absence of the valid document in support [of] Tu's membership, Tu shall not be regarded as the member of Finger Lake and he is not in presence on both sides of this action and will not defeat the diversity." *Id.* at 10. But the Chemung County court did not rely on the Chinese Agreement in granting a default judgment, nor did it state that the Chinese Agreement governed the parties' business arrangement. *See* Dkt. 1, Ex. E. In actuality, this argument was not even presented to the Chemung County court. Rather, Defendant's complaint in Chemung County court stated that, "[o]n or about August 8, 2015, Plaintiff and Finger Lake LLC entered into a certain Membership Interest Purchase Agreement and Amendment to the Membership Interest Purchase Agreement (collectively, the 'Agreement')." Dkt. 1, Ex. D. Therefore, in denying the motion to vacate the default judgment,

the state court referenced the existence of both agreements: "The breach of contract cause of action is premised on the 2015 Membership Interest Purchase Agreement and Amendment to the Membership Interest Purchase Agreement (hereinafter 'the agreement'), wherein plaintiff purchased a portion of Defendant Yang's equity interest in Finger Lake for the sum of $520,000." Dkt. 1, Ex. F. Plaintiff's argument – based on an incorrect reading of the state court's ruling – is unavailing. Accordingly, Plaintiff's statements in state court, which clearly refer to Defendant's membership in Finger Lake LLC, are particularly relevant in resolving Plaintiff's citizenship here.

Second, even Plaintiff's allegations in this Court acknowledge that Defendant is a member of Finger Lake LLC. The complaint asserts that "[o]n or about August 28, 2015, [Defendant] and Yang entered into a Membership Interests Purchase Agreement," in which Defendant "invested $500,000 in exchange for 7.15% of the membership interest of Finger Lake" and that Defendant "agree[d] to share in the profit and loss of Finger Lake." Compl. ¶¶ 13-15. By definition, this is what constitutes membership in an LLC. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008). Nor can Plaintiff here reasonably assert that it does not believe the Membership Agreement governs the parties' relationship. The very basis of Plaintiff's purported immigration fraud claim seems to be that Defendant filed the state court action knowing the Membership Agreement was valid and thus "falsely and intentionally used the Chinese agreement to support his lawsuit nevertheless." *Id.* ¶ 35.

Finally, a close review of the Membership Agreement affirms Plaintiff's previous statements that Defendant is a member of Plaintiff Finger Lake LLC. *See* Dkt. 1, Ex. B. In addition to what has already been mentioned regarding the exchange of a $500,000 investment for 7.15% membership interest in Finger Lake LLC, the Membership Agreement also provides:

- "Seller shall cause the Company's operating agreement to be amended such that Buyer [Defendant] is appointed a management position in the Company and be given day-to-day managerial responsibilities and the right to participate in the policy formulation of the Company." *Id.* ¶ 3.1.

- "Neither Seller nor the Company has guaranteed a rate of return, and no repayment or redemption arrangement of the investment has been made." *Id.* ¶ 3.2

Thus, the Court finds that Defendant is a member of Finger Lake LLC. Accordingly, Plaintiff's citizenship, which is determined by the citizenship of each of its members, necessarily overlaps with that of Defendant's. Several courts in this district have been presented with similar circumstances, where an LLC and a member of that LLC are on opposing sides of litigation, and concluded that there cannot be complete diversity. As one court stated, "in general, a plaintiff who is a member of an LLC cannot bring a diversity action against the LLC." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 119 (S.D.N.Y. 2015); *see also Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 450 (S.D.N.Y. 2014) (same); *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 330 (S.D.N.Y. 1999) (same). Accordingly, the Court lacks jurisdiction pursuant to § 1332.

### B. Federal Question Jurisdiction

Plaintiff next contends that, even if there is no diversity jurisdiction, there is federal question jurisdiction pursuant to 28 U.S.C. § 1331. Defendant disputes this theory on the basis that "Plaintiff fails to identify the federal law purportedly implicated by" its immigration fraud claim, for which there is no "private cause of action . . . under federal law." Def.'s Mot. at 8-9. Relatedly, Defendant also argues that Plaintiff's assertion of a federal claim is "so insubstantial" and "implausible" that there cannot be jurisdiction. *Id.* at 9.

"Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United

States.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 505 (2006) (quoting 28 U.S.C. § 1331). "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Id.* at 513; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."). However, if a "purported federal claim is clearly 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous,'" a court may conclude that subject-matter jurisdiction is lacking. *S. New. England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010); *see also Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 306 (2d Cir. 2003) ("[I]n order to sustain federal jurisdiction, the complaint must allege a claim that arises under the Constitution or laws of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous.").

The Court agrees with Defendant that Plaintiff has failed to show by preponderance of the evidence that federal question jurisdiction exists. *See Makarova*, 201 F.3d at 113. As an initial matter, it is not even clear to the Court what cause of action Plaintiff is alleging. From the face of the complaint, Plaintiff seems to allege that Defendant committed immigration fraud by making false representations in the ongoing action in Chemung County court. *See* Compl. ¶ 35 ("The representations made by Tu in his lawsuit in New York State Supreme Court, Chemung County were in fact false."); *id.* ¶ 38 ("Tu filed the action against Finger Lake in the Supreme Court of State of New York, Chemung County, trying to enforce the Chinese agreement, without disclosing the Agreement he submitted and relied on in support of his I-526 petition which contracted and invalidated the Chinese agreement."). Defendant interprets Plaintiff's complaint in a similar fashion: "At best, Plaintiff seems to be saying a common law cause of action for

11

fraud under State law occurred when Mr. Tu allegedly defrauded the Chemung County State Supreme Court." Def.'s Mot. at 9. In its opposition, however, Plaintiff suggests that its immigration fraud claim is instead predicated on statements that Defendant made in his EB-5 visa application. *See* Pl.'s Opp. at 11 ("The federal question at issue is the fraudulent statement made by Tu in the Membership Agreement, which is part of the application materials submitted in support of his Visa Application."). According to Plaintiff's opposition, Defendant made "fraudulent statements" by relying on the Membership Agreement in his visa application when "he knew the terms in the Chinese Agreement were the truly binding ones." *Id.*

Not only are the factual allegations underlying Plaintiff's complaint unclear, but the purported legal basis for its cause of action is as well. The complaint cites neither a federal statute nor a constitutional provision to support the immigration fraud claim, instead merely asserting that Defendant committed "immigration fraud." *See* Compl. ¶¶ 33-38. The sole legal citations in the complaint are to Federal Rule of Civil Procedure 9(b) and *First Capital Asset Management Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004), which only affirm the general principle that when fraud is alleged, a heightened standard applies. *See id.* ¶ 34. They do not establish a basis for a federal cause of action, particularly not one for immigration fraud.

Once again, in its opposition, Plaintiff attempts to clarify the complaint, suggesting for the first time that the federal basis for its cause of action is 8 U.S.C. § 1324c, which establishes "[p]enalties for document fraud" in obtaining benefits. Pl.'s Opp. at 11. But Plaintiff cites no legal support for its proposition that § 1324c provides a private cause of action for immigration fraud. Indeed, § 1324c is a criminal statute, which provides enforcement authority, "[i]n conducting investigations and hearings under this subsection," to immigration officers and administrative law judges, as well as the Attorney General in certain circumstances. 8 U.S.C. §

1324c(d). The Supreme Court has cautioned against reading an implied private cause of action into a statute without a clear statement from Congress. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." (internal citation omitted)). The Court simply "may not create" a private cause of action here.[4] *Id.* at 286-87 (urging courts against finding an implied private cause of action "no matter how desirable that might be as a policy matter, or how compatible with the statute" it might be).

Thus, not only is the Court left to hypothesize what Plaintiff is alleging, but Plaintiff has not asserted a proper basis for federal question jurisdiction. Even reading Plaintiff's allegations and opposition charitably, its claim of immigration fraud sounds more like common-law fraud, which does not present a federal question. *See Deloach v. Manhattan Mini Storage*, No. 94-CV-5792 (JFK), 1994 WL 501854, at *1 (S.D.N.Y. Sept. 14, 1994) (concluding that there is no federal question jurisdiction because the complaint, "[a]t best, . . . states a claim for state common law fraud"). As such, Plaintiff has failed to show by preponderance of the evidence that federal question jurisdiction exists here.[5] *See Makarova*, 201 F.3d at 113.

**II.    Attorney's Fees**

Finally, Defendant argues that it is entitled to attorney's fees and costs because of "the

---

[4] In addition, the gravamen of Plaintiff's complaint appears to be that Defendant made fraudulent statements in the Chemung County court, not in a visa application. Therefore, even if there was a private cause of action, Plaintiff's allegations would not fall within § 1324c's scope.

[5] It is also likely, considering that both Plaintiff's factual allegations and cause of action are unclear, that the exception to federal question jurisdiction when a "purported federal claim is clearly 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous'" would apply here. *S. New. England Tel. Co.*, 624 F.3d at 132.

frivolous nature of the Complaint, and moreover, Plaintiff's transparent attempts to establish jurisdiction by reversing its positions and citing to patently inapplicable federal law can all be considered an effort to defraud this Court." Def.'s Reply at 9-10.

In *Chambers v. NASCO, Inc.*, the Supreme Court affirmed a district court's inherent power to assess attorney's fees as a sanction "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" 501 U.S. 32, 45-46 (1991) (providing, for instance, that a court may assess attorney's fees when it "finds 'that fraud has been practiced upon [the court]'"); *see also Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (explaining that "the most common reason for a sanctions award may be the 'patently frivolous' nature" of arguments made in a court filing). Yet, the Court also urged lower courts to use this tool with "restraint and discretion." *Chambers*, 501 U.S at 44; *see also Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 124 (2d Cir. 2013) ("Federal courts have identified only a limited number of circumstances where an award of attorney's fees as part of costs is merited under common law principles."). Under Second Circuit precedent, "[t]o impose sanctions . . . , a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment and delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citation omitted).

The Court will not grant Defendant's request for attorney's fees and costs at this time. It cannot conclude with certainty that Plaintiff filed this action in "bad faith and an attempt to perpetrate a fraud on the court'" or for purposes of "delay, oppression, harassment and massive expense to reduce [Defendant] to exhausted compliance.'" *Walker v. Smith*, 277 F. Supp. 2d 297, 301 (S.D.N.Y. 2003) (internal citations omitted). In the event that Plaintiff chooses to amend, the Court will review the amended pleadings to ensure that Plaintiff has not raised claims

"entirely without color" and "in bad faith" and reconsider Defendant's request for attorney's fees at that time. *Eisemann*, 204 F.3d at 396.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted without prejudice. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 n.3 (2d Cir. 1999) ("[W]e hold that federal courts lack the power to dismiss a case with prejudice where subject matter jurisdiction does not exist[.]").  Should Plaintiff choose to amend, it shall file its amended complaint no later than June 20, 2020.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 10.

SO ORDERED.

Dated:   May 20, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge